**SECURITY SAVINGS BANK, SLA, Plaintiff,**

v.

**GREEN TREE ACCEPTANCE, INC. and Midwest Federal Savings and Loan Association of Minneapolis, Defendants.**

**Civ. A. No. 88–3630.**

United States District Court, D. New Jersey.

Jan. 9, 1989.

Milstead & Ridgway, P.C. by Stevan E. Peckel, Vineland, N.J., for plaintiff Sec. Sav. Bank, SLA.

Lipman, Antonelli, Batt & Dunlap by Gary D. Wodlinger, Vineland, N.J., and Dorsey & Whitney by Peter S. Hendrixson, David S. Larth, Minneapolis, Minn., for defendant Green Tree Acceptance, Inc.

Eisenstat, Gabage & Berman, P.C. by Mitchell S. Berman, Vineland, N.J., for defendant Midwest Federal Sav. & Loan Ass'n of Minneapolis.

## OPINION

COHEN, Senior District Judge:

In this breach of contract action brought by plaintiff, Security Savings Bank, SLA, ("Security"), defendant, Green Tree Acceptance, Inc. ("Green Tree"), has moved to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 8(a); to dismiss certain of plaintiff's claims pursuant to Fed.R.Civ.P. 9(b); to dismiss certain other claims pursuant to Fed.R.Civ.P. 12(b)(6); or in the alternative, to transfer the entire action to the United States Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a) (1988). Defendant, Midwest Federal Savings and Loan Association of Minneapolis ("Midwest"), has moved to dismiss the claims against it for lack of in personam jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). Plaintiff opposes these motions, however, Midwest apparently does not oppose Green Tree's transfer motion.

As this Court finds merit to defendant Green Tree's request for transfer and will grant such a transfer pursuant to 28 U.S.C. § 1404(a), we expressly decline to rule on any other aspects of its motion. Green Tree will be left to reassert its various motions to dismiss to the District Court of Minnesota. As we are transferring the action with respect to Green Tree, we find it to be substantially in the interests of justice to transfer the entire case; we also find, however, in personam jurisdiction lacking in this Court and thus pursuant to 28 U.S.C. § 1406(a) the action against Midwest will also be transferred to the District of Minnesota.

### I. *Factual Background*

Defendant Green Tree is a corporation organized and existing under the laws of the State of Minnesota with its principal place of business in St. Paul, Minnesota. Green Tree purchases conditional sales contracts or retail installment sales agreements ("CSCs") for manufactured housing and recreational vehicles throughout the United States.[1] A conditional sales contract, or CSC, is a writing consisting gener-

---

1. Green Tree purchases both conventional and government insured Federal Housing Authority (FHA) and Veterans' Administration (VA) contracts.

ally of: 1) an agreement to purchase and sell property; 2) a promissory note and security agreement; and 3) an assignment from the seller to the financing party. Green Tree's policy is to have all CSCs it purchases written on forms it has previously provided to the retail dealers. The retail dealer submits the application to Green Tree, and then Green Tree is responsible for completing a credit investigation of the retail or ultimate purchaser. Green Tree only purchases those CSCs from the retail dealer which meet the company guidelines for creditworthiness. Green Tree then generally pools these individuals CSCs within 30 to 120 days of purchase for sale as a package to other investors. This pooled package is routinely sold in the form of modified pass-through certificates [2] with payment to the investor who purchased the pool usually based on a fixed rate of interest on the unpaid principal amount of the underlying CSCs.

Plaintiff, Security, is a New Jersey State–Chartered Savings and Loan Association engaged in the business of banking, which includes investing for its own account in CSCs. Security purchased two pools of contracts from Green Tree with servicing obligations remaining with Green Tree. Security represents to us that there has been a lack of payments properly due on these contracts caused by the interference of Midwest, acting as a subservicer of the pooled CSC agreements between Security and Green Tree, in breach of contract, repudiation, negligence, fraud and misrepresentation claims. Security has also alleged violations of the RICO statute, 18 U.S.C. §§ 1961, *et seq.* and of the Clayton Act, 15 U.S.C. §§ 14 and 15 in its 171 count complaint.

The two pooled contract agreements entered into between Security and Green Tree on February 9, 1984 each consist of a Sale and Servicing Agreement and two Purchase Contracts. The two Purchase Contracts are one page documents which merely set forth the terms of the purchase of the pooled CSCs with no forum selection or choice of law provision. The Purchase Contracts do, however, state that:

> This is evidence that Buyer [Security] has purchased the Contracts identified on the attached exhibits *pursuant to the terms of that certain Sale and Servicing Agreement* dated February 9, 1984, between Green Tree Acceptance, Inc. as Seller–Servicer and [Security].
>
> \*      \*      \*      \*      \*      \*
>
> *Subject to the terms of such Sale and Servicing Agreement,* Seller–Servicer will remit to Buyer, Buyer's monthly principal and finance charge on the Contracts. [emphasis supplied]

Provision 17 of the Sale and Servicing Agreement between Security and Green Tree dated February 9, 1984 states:

> 17. *GOVERNING LAW.* This Agreement shall be deemed to be a Contract made under the laws of the State of *Minnesota,* and shall be construed in accordance with and shall be governed by the laws of such jurisdiction.

To further complicate matters, Green Tree apparently sold the servicing component of its agreement with Security to Midwest, allegedly without the knowledge or approval of Security. Midwest is a federally chartered Savings and Loan Association with its principal place of business in St. Paul, Minnesota. Midwest is a substantial sole preferred shareholder of Green Tree; Green Tree was previously a wholly owned subsidiary service corporation of Midwest. Green Tree and Midwest entered into an agreement for the servicing of the pooled CSCs sold to Security. That contract, entered into on May 20, 1985, also has a valid choice of law provision, located at paragraph 6.07, which provides that Minnesota

---

**2.** In the cases of FHA and VA contracts, these certificates are secured by the contracts themselves and guaranteed by the Government National Mortgage Association (GNMA). In the case of conventional contracts, which is the type of contract pool at issue here, a reserve system was created by Green Tree to satisfy estimated losses due to default on the underlying CSC. Security is alleging in part that this underlying reserve was misused and/or improperly used and allowed to become so depleted as to interfere with its investment agreements with Green Tree and make Security's pool effectively unsecured.

law shall apply to any action concerning that agreement.

## II. *Factors Warranting Transfer*

██ We decide today to transfer this action in its entirety to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a) as to the portion against Green Tree, and 28 U.S.C. § 1406(a) as to the remainder against Midwest.[3]

### A. Transfer Pursuant to 28 U.S.C. § 1404(a)

Section 1404(a) states:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The statute requires that the action be transferred only to another district or division where the original action "might have been brought." Plaintiff's action could clearly have been brought against Green Tree in the District Court of Minnesota since that is both Green Tree's place of incorporation and principal place of business. *See* 28 U.S.C. §§ 1332, 1391.

Pursuant to § 1404(a) it is within the sound discretion of the Court to determine whether the interests of justice would be served by effecting a transfer. *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964). In determining the merits of such a transfer, the plaintiff's choice of a proper forum is, according to the Third Circuit, entitled to "paramount consideration, ... and that choice * * * should not be lightly disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). Plaintiff's choice of forum, how-

ever, can not simply be conclusive just as long as venue is proper; to so find would "collapse any difference between sections 1404 and 1406," *Clopay Corp. v. Newell Companies, Inc.*, 527 F.Supp. 733 (D.Del. 1981), as well as render Congress' codification of the common law doctrine of *forum non conveniens* meaningless. *See generally* J. Moore, 1 *Moore's Federal Practice* ¶ 0.145 et seq. Thus, while this factor is a significant one, it is neither the controlling or only one to consider.

Among the other factors the Court may consider are: 1) the convenience of the witnesses; 2) the relative financial resources of the parties; 3) the parties' choice of law, if any; 4) judicial economy; 5) the availability of process to compel attendance of unwilling witnesses; 6) the costs of producing unwilling witnesses to the forum; and 7) the interests of justice. *See e.g. In re First International Services Corp.*, 47 B.R. 882 (D.Conn.1983); *Winder Industries, Inc. v. Smiths Industries, Inc.*, 1981–1 Trade Cas. (CCH) ¶ 64,126 (D.N.J. 1981) [1981 WL 2096]; *Saminsky v. Occidental Petroleum Corp.*, 373 F.Supp. 257, 258 (S.D.N.Y.1974).

### 1. *Plaintiff's Choice of Forum*

We note that while plaintiff's choice of forum is of "paramount consideration" and not to be "lightly disturbed", *Shutte, supra*, this plaintiff is a corporation who entered into agreements outside the State of New Jersey with the ability to freely bargain for the choice of forum, not an individual injured by some major conglomerate suing in his or her own State as was the case in *Shutte*. We therefore believe that although defendant still has the burden "to establish that a balancing of proper interests weigh in favor of the transfer," *Shutte*, 431 F.2d at 25, the balancing re-

---

**3.** 28 U.S.C. § 1404(a) uses the language "any civil action" in providing a transfer mechanism between federal courts. Thus one might consider that the entire action should merely be transferred pursuant to § 1404(a). However, where the claims are properly severable, such that one portion of the action can be treated as an entire action separate and apart from the other portion, then it is necessary to justify transferring both portions. We therefore fully enumerate

our reasons for transferring as to each defendant individually so as to dispense with the entire action. *Cf. In re Fine Paper Antitrust Litigation*, 685 F.2d 810, 819 (3d Cir.1982); *Wyndham Associates v. Blintiff*, 398 F.2d 614, 618 (2d Cir.), *cert. denied*, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed. 2d 438 (1968); *Consumers Distributing Co., Ltd. v. Tele–Save Merchandising Co.*, 553 F.Supp. 974 (D.N.J.1982).

quired here rests on a careful consideration of all of the above enumerated factors, without undue weight being placed on this single factor.

### 2. *The Convenience of Witnesses*

While this factor is not alone compelling to transfer, because neither party has alleged that there is a *burdensome* number of witnesses that will be required to be transported to New Jersey from Minnesota, or *vice versa*, defendant does suggest, and plaintiff does not dispute, that nearly all of the witnesses and relevant documents are located in Minnesota. Some of our brethren have given credence to this argument as a factor warranting transfer, *see Sporalich v. United States*, 471 F.Supp. 440, 441 (W.D.Pa.1979); we do not, however, find this alone to be so compelling as to warrant transfer. It is persuasive, however, when combined with the other factors weighing in favor of transfer, below.

### 3. *The Relative Financial Resources of the Parties*

As was earlier pointed out, this is a case of two corporations embroiled in a contract dispute, with each of the parties of similar financial strength. We believe from the papers submitted that the parties are on equal footing; however, plaintiff has asserted that defendant Green Tree is in deep financial difficulty. This assertion is not strong enough alone, though, to make this factor of compelling weight.

### 4. *The Parties' Choice of Law*

This is the first truly compelling factor the Court has reached. In both the Agreements between Security and Green Tree and between Green Tree and Midwest, valid choice of law provisions dictate Minnesota law shall apply. *See* Provision 17 of the Sale and Servicing Agreement of February 9, 1984 between Security and Green Tree; Provision 6.07 of the Servicing Sale Agreement of May 21, 1985 between Green Tree and Midwest.

We are bound to apply the law of the State in which we sit, New Jersey, to all substantive issues, including questions governed by choice of law principles. *Klaxon v. Stentor Electric Co.*, 313 U.S. 487, 496,

61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Rohm and Haas Co. v. Adco Chemical Co.*, 689 F.2d 424, 429 (3d Cir.1982). New Jersey conflict of laws principles clearly recognize the validity and enforceability of choice of law provisions in contracts such as the one between Security and Green Tree. *See Kalman Floor Co., Inc. v. Jos. L. Muscarelle, Inc.*, 196 N.J.Super. 16, 481 A.2d 553 (App.Div.1984) ("Generally, where parties have agreed in a commercial agreement to be governed by the laws of a particular State, our courts will uphold the contractual choice if it is not violative of the public policy of New Jersey." 196 N.J. Super. at 21, 481 A.2d 553); *see also Crinnion v. The Great Atlantic & Pacific Tea Co.*, 156 N.J.Super. 479, 483, 384 A.2d 159 (App.Div.1978); *Knollmeyer v. Rudco Industries, Inc.*, 154 N.J.Super. 309, 312–313, 381 A.2d 378 (App.Div.1977), *certif. denied*, 77 N.J. 477, 391 A.2d 492 (1978); *Air Economy Corp. v. Aero–Flow Dynamics*, 122 N.J.Super. 456, 457, 300 A.2d 856 (App.Div.1973). We have not been made aware of any public policy of the State of New Jersey that would be violated by applying the laws of the State of Minnesota to this action. Nor do we feel it would be unfair.

Applying Minnesota law will, however, have the effect of forcing a court wholly unfamiliar with that State's laws to apply the same to the instant action. This could lead to inconsistencies with the outcome of similar cases before the District of Minnesota due to our lack of familiarity with that State's law and the complex transactions at issue here which involve close interpretations of law for which we have no feel of the patterns and inclinations of Minnesota's State court decisions. We therefore find this factor to strongly weigh in favor of transfer.

### 5. *Judicial Economy*

This factor also weighs in favor of transfer. Currently, there is not one, but two separate actions stemming from basically the same underlying facts as this case, being pursued in the United States District Court for the District of Minnesota. One suit is an analogous breach of contract

action, involving pooled CSCs, brought by another investor similarly situated as Security, *First Federal Savings and Loan of New Castle v. Green Tree Acceptance, Inc. and Midwest Federal Savings and Loan Association of Minneapolis*, Civil Action No. 4–88–609 (D.Minn.1988). The second is a suit between Midwest and Green Tree concerning alleged breaches of the Servicing Sale Agreement of May 21, 1985, *Midwest Federal Savings and Loan Association of Minneapolis v. Green Tree Acceptance, Inc. and Touche Ross & Co. and Dorsey & Whitney and Lawrence M. Coss*, Civil Action No. 4–88–846 (D.Minn.1988), which also has a bearing on the action *sub judice*. The economies of having all of these disputes before one court for purposes of activities such as document production, depositions and other discovery, pre-trial management, motions and trial scheduling is compelling.

### 6. *The Availability of Process to Compel Attendance of Unwilling Witnesses*

At first blush this factor does not appear compelling because both sides have asserted the existence of critical witnesses [4] who are not subject to service of process in the jurisdiction where they are adverse. We note, however, that regardless of the existence and significance of these witnesses, the fact that we find a lack of in personam jurisdiction over Midwest means that both parties will possibly be unable to call witnesses associated with Midwest in New Jersey, because those witnesses are not subject to process here. Thus, this factor leans toward transfer so that important witnesses who are associated with Midwest can be compelled to testify on behalf of both Security and Green Tree.

### 7. *The Costs of Producing Willing Witnesses to the Forum*

Defendant has alleged, and plaintiff has not contested, that nearly all witnesses are located in Minnesota. While plaintiff will be put to some expense to bring its witnesses to Minnesota, apparently from the papers, defendant will be put to much greater expense in transporting its witnesses to New Jersey. Thus, this factor lends support to the need for transfer.

### 8. *The Interests of Justice*

We believe that it is in the interests of justice to transfer this case to the District of Minnesota. The other two suits are already before that court and all three suits are wholly governed by Minnesota law. Because of the complexity of transactions involved in this case and the significant intertwining of the complexities of these three cases, we feel that the interests of justice are served by transfer so as to avoid undue inconsistency of decision.

### B. Transfer Pursuant to 28 U.S.C. § 1406(a)

Section 1406(a) states:

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

The portion of the action brought against Midwest could have been brought in the United States District Court for the District of Minnesota, *See* 28 U.S.C. §§ 1332, 1391, since Midwest is a federally chartered Savings and Loan Association with its principal place of business in Minneapolis, Minnesota.

In order for us to exert jurisdiction over Midwest, Security is required to establish that Midwest has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [citation omitted]." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This requirement is articulated as those contacts with the forum state which indicate to Midwest that it "should reasonably anticipate being haled into court there." *World–*

---

**4.** Plaintiff alleges the necessity of a Mr. John Kelly, former Vice–President of Security, who is alleged to have negotiated the original agreement and is a New Jersey resident not subject to subpoena in Minnesota. Defendant alleges the necessity of a Mr. Alan J. Roers, former Vice–President of Green Tree, who is alleged to have negotiated the original agreement and is a Minnesota resident not subject to subpoena in New Jersey.

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). As we understand the long line of case law history emanating from the Supreme Court on this issue, it is the purposeful action of the defendant, rather than the unilateral actions of third parties claiming some relation to the defendant that creates the contacts with the forum state that we are searching for. *Hanson v. Denkla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *see also Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102, 109, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). With these guidelines firmly in mind, we examine the possible bases for jurisdiction over Midwest.

Midwest states that it has no place of business, nor any employees in New Jersey, and plaintiff has not asserted otherwise. Midwest alleges and plaintiff does not deny that Midwest owns no real or personal property in New Jersey. Midwest further asserts that it neither solicits nor transacts and has not solicited or transacted business in New Jersey; plaintiff has not shown anything to the contrary. Security, recognizing the manifest lack of traditional minimum contacts, relies on *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (Brennan, J.) for the principle that "[s]o long as commercial actors' efforts are 'purposefully directed' towards residents of another State, we [the Supreme Court] have consistently rejected the notion that an absence of physical contacts can defeat jurisdiction there." *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184.

We recognize the importance of the Supreme Court's point, however, we find it factually inapplicable to the case before us. Midwest did not engage in the type of conduct by purchasing Green Tree's right, title and interest to the servicing agreements with Security that Rudzewicz did in purchasing the franchise rights directly from Burger King in that case, precisely because Green Tree remained the ultimate servicer of the loans.[5]

Thus, whereas in *Burger King*, the franchisee (Rudzewicz) had direct contact with the forum State of Florida by purposefully initiating contact with the franchisor (Burger King) and by signing the franchise agreement (which provided Florida law applied and chose Florida in a valid forum selection clause[6]), Midwest here did not reach out beyond Minnesota to contract with Security; rather Midwest contracted with Green Tree in Minnesota in an agreement that provided a mechanism whereby Green Tree remained the outward servicer of the pooled CSCs to Security. See Article V of the Servicing Sale Agreement of May 20, 1985 between Green Tree and Midwest. We take heed of the guidance Justice Brennan so clearly articulated in *Burger King*, at 478, 105 S.Ct. at 2185:

> If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot. [emphasis in original].

And Justice Brennan's comments earlier in the opinion, at 474–475, 105 S.Ct. at 2182–2183, are equally enlightening:

> Although it has been argued that foreseeability of causing *injury* in another State should be sufficient to establish such contacts there when the policy con-

---

**5.** This is clear from the assertion by plaintiff that it was unaware of the Agreement between Green Tree and Midwest until Midwest directed Green Tree to withhold payments to Security because of the insufficient reserve pool, which occurred at a time much later (May 1988) than the transfer of rights from Green Tree to Midwest (May 1985). See Plaintiff's Memorandum In Opposition To Defendants' Motions at 7.

**6.** The Court also gave some weight to the fact that one of Rudzewicz' business associates in the franchise in Michigan had attended a training seminar in Florida at Burger King's facilities, 471 U.S. at 479, 105 S.Ct. at 2185.

siderations so require, [footnote omitted] the Court has consistently held that this kind of foreseeability is not a "sufficient benchmark" for exercising personal jurisdiction. [citation omitted]. Instead, "the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." [*World–Wide Volkswagen*, 444 U.S.] at 297 [100 S.Ct. at 567]. In defining when it is that a potential defendant should "reasonably anticipate" out-of-state litigation, the Court frequently has drawn from the reasoning of *Hanson v. Denkla*, 357 U.S. 235, 253, [78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283] (1958):

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, *Keeton v. Hustler Magazine, Inc.*, 465 U.S., at 774 [104 S.Ct., at 1478]; ... or of the "unilateral activity of another party or a third person," *Helicopteros Nacionales de Columbia, S.A. v. Hall*, [466 U.S. 408] at 417 [104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984)] [footnote omitted].... Thus where the defendant "deliberately" has ... created "continuing obligations" between himself and residents of the forum, *Travelers Health Assn. v. Virginia*, 339 U.S., [643] at 648 [70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)] he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presump-

tively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

It is clear to us that by following Justice Brennan's guidelines above, we reach the correct decision in finding a lack of in personam jurisdiction. Although the Servicing Sale Agreement of May 20, 1985 provides in paragraph 2.02 that Midwest was to assume all "obligations of Green Tree under the Servicing Agreements [with Security] to establish, maintain, pay over to Investors, and replenish reserve funds," that provision was rendered irrelevant to this determination of jurisdiction by the election of Midwest under Article V of the Servicing Sale Agreement to have Green Tree continue to service the pooled CSCs to Security. We therefore transfer this aspect of the case to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1406(a).

### III. *Green Tree's Request for Attorney's Fees*

Green Tree seeks attorney's fees pursuant to Fed.R.Civ.P. 11 on grounds that Security's RICO, Clayton Act, fraud, deceit and misrepresentation claims "are plainly not well founded under Fed.R.Civ.P. 9(b)." Defendant's Memorandum in Support of Motion to Dismiss or Transfer at 15. We do not, however, need to reach this question because we are transferring the action. The outcome of this aspect of the motion depends on the determination of Green Tree's prior request for dismissal. Since we decline to rule on the sufficiency of Security's complaint, we also refuse to grant attorney's fees to Green Tree at this time.

### ORDER

This matter having come before the Court on a motion by defendant, Green Tree Acceptance, Inc., to dismiss or, in the alternative, for a change of venue pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of Minnesota, and for attorney's fees pursuant to Fed. R.Civ.P. 11; and

**358**

Upon a motion by defendant, Midwest Federal Savings and Loan Association of Minneapolis to dismiss for lack of in personam jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2); and

The Court having considered the briefs and affidavits submitted by the parties and having determined that it is in the interests of justice to transfer the above captioned action with respect to defendant Green Tree Acceptance, Inc. pursuant to 28 U.S.C. § 1404(a) and with respect to Midwest Federal Savings and Loan Association of Minneapolis pursuant to 28 U.S.C. § 1406(a); and

The Court further having determined that attorney's fees are not warranted at this time; and

For good cause shown;

It is on this 9th day of January, 1989 ORDERED that said motion be and the same is hereby GRANTED in part as to Green Tree Acceptance, Inc. to transfer to the United States District Court for the District of Minnesota and DENIED in part as to Green Tree Acceptance, Inc.'s request for attorney's fees; and

IT IS FURTHER ORDERED that the action as to Midwest Federal Savings and Loan Association of Minneapolis is hereby transferred to the United States District Court for the District of Minnesota.