**Francis J. LaROSE, Plaintiff,**

v.

**SPONCO MFG. INC., trading or doing business as "Sponco", and Phoenix Sales Corporation, Reece Supply Co., and Sky–Hy Erectors & Equipment, Inc., jointly and severally, Defendants.**

Civ. A. No. 87–4122.

United States District Court,
D. New Jersey.

May 3, 1989.

**456**

Brown & Connery, by William J. Cook, Stephen Defeo, Westmont, N.J., for plaintiff.

James & Addas, Jersey City, New Jersey by Craig W. Miller, Jersey City, N.J., for defendant, Reece Supply Co. of Dallas, Inc.

## OPINION

COHEN, Senior District Judge:

Presently before us, in this products liability action, is a motion to dismiss for lack of *in personam* jurisdiction, filed by defendant, Reece Supply Co. of Dallas, Inc. ("Reece"). Reece claims that it lacks the minimum contacts necessary to be haled into New Jersey as it has never transacted business in this State; in short Reece claims to have never purposefully availed itself of the benefits of this jurisdiction, and therefore should not be subject to the concomitant burden of being subjected to suit here. Plaintiff, Francis J. LaRose ("LaRose") argues a theory of injection of goods into the stream of commerce as a basis for our holding *in personam* jurisdiction over Reece, urging that because Reece allegedly sold the subject defective product in question, an aerial ladder truck, to LaRose's employer Riley Signs of Pleasantville, New Jersey ("Riley") in a face-to-face transaction, Reece therefore knew that the product would be used in New Jersey because Riley must have so indicated to them. One of the main factual questions contested by both sides is how the sale transaction of the aerial ladder occurred and whether Reece was aware that this product was purchased for use solely in New Jersey. We conclude, for the reasons set forth below, that there is no *in personam* jurisdiction in this Court, and that pursuant to 28 U.S.C. § 1406(a) this portion of the case will be transferred to the United States District Court for the Northern District of Texas.

## I. FACTUAL BACKGROUND

Francis LaRose, was a sign maintenance worker living in New Jersey, employed by Riley Signs, a sign maintenance company located in Pleasantville, New Jersey and operating solely in New Jersey until he was severely injured in an accident in Atlantic City on January 29, 1987. While LaRose was perched on a raised and extended fifty-five foot aerial ladder mounted on a Chevrolet truck chassis, manufactured by the Sponco Mfg. Co. ("Sponco"), another defendant in this case, allegedly as a result of its defective condition and unsafe design, the Sponco aerial ladder suddenly uncontrollably retracted in a "free-fall fashion" causing LaRose to plummet approximately forty feet to the pavement below. As a result of his significant injuries resulting from the fall, LaRose claims to be totally disabled and unable to continue working at any job. LaRose, a New York resident,[1] filed suit in New Jersey State Court, and the action was properly removed to this Court with jurisdiction predicated upon 28 U.S.C. § 1332. The defendants are Sponco Mfg. Co. of Ottowa, Kansas, the manufacturer of the aerial ladder; Sponco's parent company, Phoenix Sales Corp.; Reece, a Texas based company; and Sky-Hy Erectors & Equipment, Inc. of Plainfield, New Jersey, the company that reconstructed and rebuilt the aerial ladder for Riley in 1984. Riley is not named as a defendant.

Primarily at issue, in our consideration of this motion, is the manner in which the vehicle in question, the Sponco aerial ladder truck, came into Riley's possession. Plaintiff alleges that representatives of Reece were present at a National Electric Sign Association Convention ("NESA") in Las Vegas, Nevada in May of 1979, as were

---

1. LaRose is a New York state resident, having moved to Loudonville, New York after the accident but prior to filing suit in state court.

representatives of Riley and Sponco. Plaintiff avers that representatives of Reece sold the Sponco aerial ladder truck in a face-to-face transaction to representatives of Riley, and that Riley indicated to Reece's sales people that they intended to use this piece of equipment solely in connection with their New Jersey business. Plaintiff argues that this face-to-face transaction suffices to posit *in personam* jurisdiction in this Court, even though all of the traditional minimum contacts are lacking. Jurisdiction is proper even though there is this lack of traditional contacts according to plaintiff, because Reece's sales of the product "extend[ed] to New Jersey-based customers, as evidenced not only by Reece's purchase of the subject Sponco unit for demonstration at a national trade convention in Las Vegas open to customers nationwide, but by the fact that Reece indeed sold the subject product to Riley Signs, a customer based exclusively in New Jersey." *Plaintiff's Brief in Opposition* at 5, 6. We take this to be an "injection into the stream of commerce" argument, which has in some instances supported *in personam* jurisdiction. *See, e.g., Asahi Metal Industry Co. v. Superior Court of Calif. of Solano County*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). As evidence of the face-to-face transaction, plaintiff proffers a Seller, Donor, or Trader's Affidavit dated May 14, 1979 which indicates that Reece Supply Company sold the involved vehicle to Riley Signs for twenty-five thousand dollars.

Reece suggests that the events at the NESA convention occurred in a significantly different manner. Rather than Reece being involved in a face-to-face transaction with Riley, defendant alleges that representatives of Sponco sold the product to Riley. *See Affidavit of Alton Herring* at 2 (Dec. 23, 1988). However, due to an exclusive distribution franchise agreement between Sponco as wholesaler and Reece as retailer, Sponco was precluded from selling directly to Riley while in Reece's exclusive distribution territory. Therefore the sale had to be transacted "through" Reece, although Alton Herring, Executive Vice-President of Reece avers that "at no time

did Reece Supply Co. of Dallas, Inc. ever handle the truck sale or put it [the truck] in inventory at its premises." *Affidavit of Alton Herring* at 2 (Sept. 26, 1988). Richard Reece, President of Reece, who was also present at the NESA convention also states that "[a]t no time during the convention, did any employee of Reece Supply Co. of Dallas, Inc. sell in a face-to-face manner the 1979 Chevrolet truck to the person or company who bought it off the convention floor; this sale transaction was made by and between employees of Sponco Mfg., Inc. and the buyer and was not participated in by those identified employees of Reece Supply Co. of Dallas, Inc., who were present at the convention." *Affidavit of Richard Reece*, at 2 (Dec. 20, 1988).

Thus, Reece claims only to have done the paperwork necessary for the transaction because Sponco was foreclosed from direct sales to the public by the distribution franchise agreement, and did not purposefully avail itself of the benefits of doing business in New Jersey, as Reece did not "inject" anything into the stream of commerce, but merely transferred title after the goods were placed into that stream by Sponco.

## II. REECE'S MOTION TO DISMISS FOR LACK OF IN PERSONAM JURISDICTION

Reece has moved, pursuant to Fed.R.Civ. P. 12(b)(2), to dismiss for lack of *in personam* jurisdiction. The burden of establishing that this Court possesses *in personam* jurisdiction over a party is always placed on the party asserting its existence, in this case, the plaintiff. *See, e.g., Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987). To overcome this challenge, plaintiff is required to establish either that this cause of action arose specifically from defendant's particular activities within the forum State ("specific jurisdiction") or that defendant engaged in "continuous and systematic" contacts with the forum State, New Jersey ("general jurisdiction"). *See, e.g., Helicopteros Nacionales de Colombia, S.A. v.*

*Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

Plaintiff here is asserting specific jurisdiction arising from the injection into the stream of commerce by Reece of the defective product with knowledge that the product would come to rest in New Jersey. He need only establish a *prima facie* case of jurisdiction at this point, since the factual record only contains pleadings and affidavits. *See, e.g., Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977) ("[I]f a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." This is so because "[a]ny greater burden—such as proof by a preponderance of the evidence—would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavits and supporting materials."). Thus, here plaintiff would meet the threshold burden of pleading/persuasion if his pleadings and affidavits are sufficient to support a finding of jurisdiction.[2]

In the process of determining whether plaintiff has met this burden, we are mindful that pleadings and affidavits are to be considered in the light most favorable to the plaintiff, as non-moving party. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *see also Pharmaceutical Group Services, Inc. v. National Pharmacies, Inc.,* 592 F.Supp. 1247, 1248 (E.D.Pa.1984). Although neither the Third Circuit nor the Supreme Court has determined whether we should resolve factual discrepancies in juxtaposed affidavits in favor of the party bearing the burden of establishing jurisdiction, several other courts have suggested that the proper course is to resolve such discrepancies in the burdened party's favor, which in this case is the plaintiff. *See Pharmaceutical Group Services, supra* at 1248; *Felicia v. Gulf American Barge, Ltd.,* 555 F.Supp. 801, 803 n. 1 (N.D.Ill.1983). *See also United States Ry. Equip. Co. v. Port Huron & Detroit R. Co.,* 495 F.2d 1127, 1128 (7th Cir.1974); *O'Hare Int'l. Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir.1971).

We agree that this is the most prudent course relying on the Court's rationale in *Data Disk, supra* 557 F.2d at 1285, quoted above for the related concept of level of burden. It makes sense to us that to simply allow defendant to controvert plaintiff's affidavits with their own versions and then resolve discrepancies in its favor would always lead to the conclusion that the defendant should be dismissed. We do not think that is a prudent result, at such an early stage of litigation, without the benefit of a full evidentiary hearing. Cautious as we are about any potential "opening of the litigation floodgates," we believe that by resolving discrepancies in favor of the plaintiff (or party with the burden) we will not be opening the floodgates, nor will we be foreclosing plaintiffs by a knee-jerk reaction. The converse of this mechanistic approach, resolving discrepancies in plaintiff's favor, is not so troublesome as the plaintiff still has the burden of making a *prima facie* case, which some plaintiffs will invariably fail to make.

Finally, a corollary to the rule we have just stated at length is that until either an evidentiary hearing is had or trial is reached, once the plaintiff has met the burden and established a *prima facie* case of jurisdiction, that suffices, regardless of any controverting presentation by the moving party, to defeat the motion. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). Thus, if plaintiff meets the *prima facie* burden, he may proceed to trial, and may only be challenged to establish jurisdiction again at a

**2.** As there is no statutory method by which we can resolve this issue, the mode of determining the motion to dismiss is left to our discretion. *See Gibbs v. Buck,* 307 U.S. 66, 71–72, 59 S.Ct. 725, 728–29, 83 L.Ed. 1111 (1939). We chose to proceed to disposition on the basis of affidavits, without requiring an evidentiary hearing, thus necessitating the lower threshold standard for burden of establishing jurisdiction. Had we desired an evidentiary hearing, plaintiff would have been put to the higher burden of persuasion by a preponderance of the evidence. *See Data Disk, supra* at 1285.

pre-trial hearing where the burden is then raised to a preponderance of the evidence standard, such as on a motion for summary judgment, or at trial where the higher burden also attaches, but no other preliminary motions on the papers can re-visit the jurisdiction issue. *Marine Midland Bank, supra.*

We now turn to the more difficult question of whether plaintiff has set forth a *prima facie* showing of *in personam* jurisdiction. Plaintiff's and defendants' submitted affidavits are not minorily inconsistent, rather there are significant discrepancies in what transpired at the NESA convention. Accordingly we take plaintiff's assertions in the pleadings and affidavits as the controlling facts.

To establish a *prima facie* case of specific *in personam* jurisdiction, LaRose is required to prove that Reece has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [citation omitted]." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). While it is difficult to provide a single definition of "minimum contacts," clearly the *International Shoe* requirements can be further articulated as those contacts with the forum State that indicate to a defendant that it "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).[3] We have recently examined this issue, *see Security Savings Bank, SLA v. Green Tree Acceptance, Inc.,* 703 F.Supp. 350, 356–57 (D.N.J. 1989) and concluded that "it is the purposeful action of the defendant, rather than the unilateral actions of third parties claiming some relation to the defendant that creates the contacts with the forum State that we are searching for. *Hanson v. Denckla,*

357 U.S. 235, 253 [78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283] (1958); *see also Asahi Metal Industry Co. v. Superior Court of California, Solano County,* 480 U.S. 102, 109 [107 S.Ct. 1026, 1031, 94 L.Ed.2d 92] (1987); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 [105 S.Ct. 2174, 2183, 85 L.Ed.2d 528] (1985); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 [104 S.Ct. 1473, 1478, 79 L.Ed.2d 790] (1984)." *Security Sav. Bank, supra,* at 356.

■ As previously noted, plaintiff relies on an injection of goods into the stream of commerce argument because admittedly defendant has none of the traditional minimum contacts such as place of business, ownership of property, solicitation or transaction of business, advertising, or franchises within the borders of the State of New Jersey. This stream of commerce argument, though, can be used in two different contexts. Generally, the stream of commerce basis for jurisdiction is asserted against manufacturers who place a component part or product into a distributive chain that ultimately reaches the consumer after passing through many other hands. *See, e.g., Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961). Although the Court in *World–Wide Volkswagen, supra,* 444 U.S. at 298, 100 S.Ct. at 567 held that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the *expectation* that they will be *purchased* by consumers in the Forum State" (emphasis supplied), most recently, a plurality of the Supreme Court has cast aspersions on this theory as a basis for jurisdiction, requiring something more than mere injection of goods into the stream of commerce. In *Asahi, supra,* 480 U.S. at 112, 107 S.Ct. at 1033,

---

**3.** It should be noted that it is well-settled that our exercise of *in personam* jurisdiction is limited only by the boundaries of the Due Process Clause of the Fourteenth Amendment. *See, e.g., Kulko v. California Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Charles Gendler & Co., Inc. v. Telecom Equipment Corp.,* 102 N.J. 460, 469, 508 A.2d 1127 (1986). ("Rule

4:4–4, this state's equivalent of a 'long-arm statute' permits service of process on non-resident defendants 'consistent with due process of law.' Consequently, 'we will allow out-of-state service to the uttermost limits permitted by the United States Constitution.' *Avdel Corp. v. Mecure,* 58 N.J. 264, 268 [277 A.2d 207] (1971)." *Id.* at 469, 508 A.2d 1127.)

four Justices stated that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." We do not need to reach and resolve this apparent conflict, however, because the case before us falls under the second usage of the stream of commerce basis for jurisdiction, that is, where the consumer introduces the product into the forum State after purchase.[4]

It is clear that when the consumer carries the product from the jurisdiction of the point of sale into the forum State, even though the seller knows that the consumer is purchasing the product for primary use in the forum State, this alone is insufficient to establish the necessary minimum contacts to support our exercise of jurisdiction over the seller, because the mere "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla, supra*, 357 U.S. at 253, 78 S.Ct. at 1239; *World–Wide Volkswagen, supra*, 444 U.S. at 298, 100 S.Ct. at 567; *see also Growden v. Ed Bowlin and Assoc., Inc.*, 733 F.2d 1149, 1151 (5th Cir.1984); *Dommel's Hotel, Inc. v. East West Helicopter, Inc.*, 580 F.Supp. 15, 18–19 (E.D.Pa.1984).

■ Taking the facts averred by plaintiff as true and viewing them in the light most favorable to him, we still are led to the inescapable conclusion that *in personam* jurisdiction is lacking over Reece, even if Reece had actual knowledge of Riley's intent to use the Sponco aerial ladder truck solely in New Jersey, because there has been no showing that Reece "purposefully avail[ed] itself of the privilege" *Hanson v. Denckla, supra*, 357 U.S. at 253, 78 S.Ct. at 1240, of conducting business in New Jersey. Therefore, Reece should not be held to the concomitant burden of litigation in New Jersey. We are loathe, however, to dismiss plaintiff's cause of action when Congress has provided a procedural vehicle for us to divert actions brought in an improper venue to the proper district court, 28 U.S.C. § 1406(a),[5] when it would be in the interest of justice to do so.

The Third Circuit has made it clear that we have the power to transfer a case to a district in which the case could have originally been brought even though we lack *in personam* jurisdiction over the defendants. *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 544 (3d Cir.1985). The Court in *Gehling* however, did not indicate where the authority for this power is derived from. On the other hand, the Second Circuit has concisely and informatively examined the bases for this authority in *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77 (2d Cir.1978). In *Corke* the Court addressed the apparent anomaly in the drafting of 28 U.S.C. §§ 1404 and 1406 which when read literally leads to the result that transfer is permitted when both venue and jurisdiction are lacking in the district court, but not permitted when, as in

---

**4.** Another way to look at the stream of commerce basis for jurisdiction, rather than dividing it into two types, is to use a sliding scale based on foreseeability. In interpreting *World–Wide Volkswagen* and adopting the viability of the stream of commerce argument, the New Jersey Supreme Court stated that:

the Supreme Court noted that the stream-of-commerce theory would apply to subject foreign manufacturers and major distributors, but not local retailers or distributors, to jurisdiction in the states where their products were eventually shipped and sold. The foreseeable market served by local retailers and distributors, which are at the end of the distribution chain is constrained [citations omitted].

*Telecom Equip. Corp., supra*, 102 N.J. at 477, 508 A.2d 1127.

Using this alternative approach to interpreting the stream of commerce basis for jurisdiction leads to the same ultimate conclusion; Reece is properly characterized even under plaintiff's version of the facts as a local distributor, with a "constrained" foreseeable market, which does not extend outside their sales territory. Since New Jersey is not within their territory, it is not "foreseeable" that they would place goods into that jurisdiction.

**5.** 28 U.S.C. § 1406(a) states:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought.

this case, venue is proper [6] but *in personam* jurisdiction is lacking. *See also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 468, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962) (Harlan, J. dissenting). The Second Circuit resolved this incongruity of results by reading § 1404 and § 1406 in *pari materia* and then added a reasonable interpretation of the purpose of the two provisions to cure the Congressional drafting defect by allowing transfer when in the interest of justice. *Corke, supra*, 572 F.2d at 80. We believe that the Third Circuit approach in *Gehling* implicitly followed the Second Circuit's rationale in *Corke*, and therefore simply use 28 U.S.C. § 1406 as the procedural vehicle by which to exercise the power the Third Circuit has already informed us that we possess.

Since plaintiff could potentially face a statute of limitations bar to suit in a proper venue if we dismiss, we find it to be in the interests of justice to transfer the portion of this action relating to Reece to the United States District Court for the Northern District of Texas. *See, e.g., Johnson v. Helicopter & Airplane Services Corp.*, 389 F.Supp. 509, 523 (D.Md. 1974).[7]

An appropriate Order follows.

### ORDER

This matter having come before the Court on a motion by defendant, Reece Supply Co. of Dallas, Inc. ("Reece") to dismiss for lack of *in personam* jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2); and

The Court having considered the briefs and affidavits submitted by the parties and having determined that *in personam* jurisdiction is lacking, however, that it is within the interests of justice pursuant to 28 U.S. C. § 1406(a) to sever the action against Reece and transfer that portion of the action to the United States District Court for the Northern District of Texas where *in personam* jurisdiction is proper; and

For good cause shown;

It is on this 3rd day of May, 1989 ORDERED that said motion be and the same is hereby DENIED and the action as to Reece is severed and transferred to the United States District Court for the Northern District of Texas.

---

**6.** Venue is determined by 28 U.S.C. § 1391(a), which states that in diversity cases a civil action may "be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." This Court has venue because it is where the claim arose.

**7.** In severing Reece from this action and transferring it to the Northern District of Texas, we make no comment as to the indispensable nature of Reece as no other defendant has raised this issue.