**LEONARD A. FEINBERG, INC. t/a Mr. Noah**

v.

**CENTRAL ASIA CAPITAL COR- PORATION, LIMITED and Fashion Will Limited.**

No. 95–8080.

United States District Court, E.D. Pennsylvania.

April 4, 1996.

Janet Stern Holcombe, Judah I. Labovitz, Mann, Ungar, Spector, Labovitz, P.C., Philadelphia, PA, for Plaintiff.

Paul J. Kennedy, Clark, Ladner, Fortenbaugh & Young, Philadelphia, PA, for Defendants.

### OPINION

PADOVA, District Judge.

Plaintiff, Leonard A. Feinberg, Inc., a Pennsylvania corporation, filed a nine count complaint against Central Asia Capital Corporation, Limited ("Central Asia") and Fash-

ion Will Limited ("Fashion Will"), both Hong Kong corporations.[1] Central Asia moves to dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(2), alleging this Court cannot exercise personal jurisdiction. For the following reasons, I will deny Central Asia's Motion.

### I. FACTS

Plaintiff's Complaint alleges the following facts. Plaintiff imports and sells ladies' and children's clothing in the United States. Fashion Will supplies Plaintiff with raw materials and finished garments. In March, 1995, Plaintiff contracted with Fashion Will to purchase 30,000 dozen cotton rompers.[2] Fashion Will requested that Plaintiff obtain a letter of credit naming Fashion Will as the beneficiary.[3] On March 28, 1995, Plaintiff caused Meridian Bank ("Meridian"), located in Philadelphia, Pennsylvania, to issue a letter of credit ("Letter 1") in the amount of $1,000,000, naming Fashion Will as the beneficiary. Under Letter 1, after Fashion Will presented specified shipping documents to Meridian indicating that Fashion Will was making a shipment of merchandise to Plaintiff, Meridian would advance Fashion Will the purchase price for the merchandise; Plaintiff remained ultimately liable to Meridian.

On March 30, 1995, Fashion Will asked Plaintiff to modify Letter 1 to add a "red clause" which limited

---

1. The Complaint asserts the following causes of action: fraud (count I); conversion (count II); violations of the Uniform Commercial Code (count III); civil conspiracy (count IV); violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. §§ 1961–1968 (West 1984 & Supp.1995) ("RICO"); negligent misrepresentation (count VI); breach of fiduciary duty (against Fashion Will only) (count VII); breach of contract (against Fashion Will only) (count VIII); and tortious inducement (against Central Asia only) (count IX).

2. A romper is "a one piece garment esp. for children, with the lower part shaped like bloomers." Webster's Collegiate Dictionary 1022 (9th ed. 1990).

3. Under a letter of credit, "the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the

credit. A credit may be either revocable or irrevocable. The engagement may be either an agreement to honor or a statement that the bank or other person is authorized." 13 Pa. Cons.Stat.Ann. § 5103(a) (West 1984). A beneficiary is "the person who is entitled under its terms to draw or demand payment." Id.

> By issuing the letter of credit, the bank substitutes its credit for that of its customer. The bank's obligation under the letter of credit is independent of the underlying sales contract. If the presented documents comply with the terms of the letter of credit, the bank is obligated to pay regardless of whether the goods themselves conform to the contractual terms. So viewed, the letter of credit is closely akin to a cashier's check or other negotiable instrument issued by a bank.

*Leney v. Plum Grove Bank,* 670 F.2d 878, 881 (10th Cir.1982).

negotiations under [Letter 1] to defendant Central Asia and [authorized] Central Asia to advance, prior to purchase and shipment of merchandise, up to 60% of the amount of [Letter 1] to Fashion Will upon sight draft and a written undertaking by Fashion Will addressed to Feinberg that the advance would be used to purchase raw materials or finished products.

Compl. at ¶ 11. Fashion Will told Plaintiff that without the red clause, Fashion Will could not purchase the rompers. On April 4, 1995, the red clause was added to Letter 1. The red clause allowed Central Asia to advance Fashion Will the monies required to purchase Plaintiff's merchandise without requiring Fashion Will to first present the shipping documents. In the future, after Fashion Will shipped the merchandise to Plaintiff, Central Asia would present the specified shipping documents to Meridian in conjunction with its request for reimbursement.

On April 6, 1995, Fashion Will requested further amendment to Letter 1 because of rising yarn prices, and on April 10, 1995, Plaintiff caused Meridian to modify Letter 1 and extend certain dates. Fashion Will made similar extension requests on June 12, 1995, June 26, 1995, and July 26, 1995, and Plaintiff granted them on June 14, 1995, July 11, 1995, and July 26, 1995 respectively. On July 18, 1995, July 20, 1995, and September 5, 1995, Plaintiff further modified Letter 1, each time increasing its *amount*, bringing it to $1,873,655.

Also on April 10, 1995, Central Asia sent a facsimile to Meridian stating that it had advanced Fashion Will $600,000 pursuant to Letter 1's red clause. Central Asia attached the appropriate documentation, i.e. "sight drafts and an undertaking by Fashion Will addressed to Plaintiff, dated April 8, 1995, that the advance was being used to purchase raw materials or finished goods." Compl. at ¶ 15. Central Asia repeatedly advised Meridian of its advances to Fashion Will via facsimile, with the same accompanying documentation, on July 21, 1995, July 25, 1995, September 11, 1995, and September 14, 1995. After Central Asia sent each facsimile to Meridian, it mailed copies of the undertakings by Fashion Will to Meridian's office in Philadelphia.

On September 1, 1995, Fashion Will told Plaintiff that a typhoon in China had flooded its factory and damaged the merchandise, necessitating a new letter of credit. Plaintiff then caused Meridian to issue a second letter of credit ("Letter 2") for $310,199.18, which also contained a red clause. On September 27, 1995, Fashion Will informed Plaintiff that financial difficulties would preclude Fashion Will from filling Plaintiff's orders. At this meeting, Fashion Will also admitted that it used the red clause advances to pay down and reduce its indebtedness to Central Asia. Specifically, the collateral securing Fashion Will's loan from Central Asia had decreased in value; "Central Asia pressured [Fashion Will] to pay off the loans[;] and [Fashion Will] used, and Central Asia accepted, the red clause advances to reduce that indebtedness." Compl. at ¶ 41. Fashion Will never used the money to purchase raw materials or finished goods for Plaintiff, and Fashion Will has no intention of fulfilling its commitments to Plaintiff for the shipment of merchandise covered by Letter 1 and Letter 2. On December 1, 1995, Central Asia made calls upon Meridian on Letter 1 and Letter 2. *See* Judah Labovitz Aff. at ¶ 2, Pl.'s Mem.Opp. Ex. A.

## II. STANDARD OF REVIEW

The Court enjoys "considerable procedural leeway" in deciding a motion to dismiss for lack of personal jurisdiction: "[i]t may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981) (citing *inter alia Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir.1977)). If the court decides *not* to conduct an evidentiary hearing, the plaintiff "need make only a *prima facie* showing of jurisdiction through its affidavits and supporting materials." *Id.* Plaintiff must eventually establish jurisdiction by a preponderance of the evidence, "either at a pretrial evidentiary hearing or at trial. But, until such a hearing is held, a

*prima facie* showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." *Id.* *See Boit v. Gar–Tec Prods., Inc.,* 967 F.2d 671, 676 (1st Cir.1992) (noting that if the court denies the motion to dismiss, "it implicitly ... states that a hearing and determination of the motion to dismiss will be deferred until trial"); *LaRose v. Sponco Mfg., Inc.,* 712 F.Supp. 455, 458 (D.N.J.1989) (finding "Plaintiff need only establish a *prima facie* case of jurisdiction at this point, since the factual record only contains pleadings and affidavits"). Plaintiff makes a *prima facie* showing if it establishes, "with reasonable particularity, sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS Nat'l Assoc. v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992) (citation omitted).

The Court considers "only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit,* 967 F.2d at 675. Plaintiff can defeat a motion to dismiss if it makes a showing "as to every fact required to satisfy both the forum's long arm statute and the due process clause of the Constitution.... [The showing] must be based on evidence of specific facts set forth in the record. Plaintiff must go beyond the pleadings and make an affirmative proof." *Id.. See Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66–67 n. 9 (3d Cir.1984) (finding plaintiff sustains its burden of proof "through sworn affidavits or other competent evidence.... [P]laintiff [cannot] rely on the bare pleadings alone.... [Plaintiff] must respond with actual proofs, not mere allegations").

In ascertaining whether Plaintiff has established a *prima facie* case, the Court does not act as a fact-finder. "It accepts properly supported proffers of evidence by the plaintiff as true." *Boit,* 967 F.2d at 675. *See Carteret Savings Bank, F.A. v. Shushan,* 954 F.2d 141, 142 n. 1 (3d Cir.) (finding courts "must accept all the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff") (citing *inter alia Marine Midland Bank v. Miller,* 664 F.2d 899, 904 (2d Cir.1981)), *cert. denied,* 506 U.S. 817,

113 S.Ct. 61, 121 L.Ed.2d 29 (1992). *See also LaRose,* 712 F.Supp. at 458 (D.N.J.1989) (noting "[a]lthough neither the Third Circuit nor the Supreme Court has determined whether we should resolve factual discrepancies in favor of the party bearing the burden of establishing jurisdiction, several other courts have suggested that the proper course is to resolve such discrepancies in the burdened party's favor"); *General Equip. Mfrs. v. Coco Bros., Inc.,* 702 F.Supp. 608, 610 (S.D.Miss.1988) (finding that any conflicting facts alleged in opposing affidavits are resolved in plaintiff's favor).

In evaluating a Rule 12(b)(2) motion, the Court's analysis is similar to that employed in deciding a motion of summary judgment:

> For example, the pleadings and affidavits submitted on a 12(b)(2) motion are received in a light most favorable to the plaintiff. In sharp contrast to the summary judgment procedure, however, the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal.... [This rule] prevent[s] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts.... [T]he defendant who alleges facts to defeat jurisdiction has recourse to the court's discretionary authority to hold an evidentiary hearing if he disputes the plaintiff's factual assertions.

*Theunissen v. Matthews,* 935 F.2d 1454, 1459 (6th Cir.1991).

## III. *DISCUSSION*

### A. *PENNSYLVANIA'S LONG ARM STATUTE*

The first step in the Court's jurisdictional analysis is to determine whether Plaintiff has made out a *prima facie* case under Pennsylvania's long arm statute. *Boit v. Gar–Tec Prods., Inc.,* 967 F.2d 671, 675 (1st Cir.1992). Under 42 Pa.Cons.Stat.Ann. § 5322 (West 1981 & Supp.1995), Pennsylvania courts may exercise personal jurisdiction over anyone "[c]ausing harm or tortious injury by an act or omission in this Commonwealth [or] [c]ausing harm or tortious injury in this

Commonwealth by an act or omission outside this Commonwealth." 42 Pa.Cons.Stat.Ann. § 5322(a)(3), (4). Accepting Plaintiff's allegations as true and construing disputed facts in Plaintiff's favor compels the conclusion that this Court may exercise jurisdiction under Pennsylvania's long arm statute.

Plaintiff's Complaint charges that Central Asia intentionally misrepresented the intended uses of the red clause advances:

> In submitting its fax transmission to Meridian Bank, Central Asia intentionally misrepresented the intended use of the advance and failed to and did not disclose, and in submitting its undertaking, Fashion Will intentionally misrepresented the intended use of the advance and failed to and did not disclose, that Fashion Will was substantially indebted to Central Asia, that its indebtedness was secured by all of its assets and that in fact Fashion Will did not intend to use the advance to purchase raw materials and finished goods, but rather to pay down its indebtedness to Central Asia.

Compl. at ¶¶ 16. According to Plaintiff, the documents submitted in conjunction with Central Asia's facsimiles to Meridian notifying Meridian of the advances Central Asia made to Fashion Will intentionally misrepresented the actual destination of the funds. Those documents, undertakings by Fashion Will addressed to Plaintiff, stated the advances would be used to purchase raw materials for Plaintiff. Despite this representation, Fashion Will used the advances to pay down its debts to Central Asia. *See* Compl. ¶¶ 16, 27, 36, and 38.

 In addition to its *verified* Complaint,[4] Plaintiff provides the following submissions. The affidavit of Judah Labovitz, Plaintiff's attorney, states that Central Asia made calls on Letter 1 and Letter 2, requesting that Meridian refund, to Central Asia's bank account in New York, the advances previously made by Central Asia to Fashion Will pursuant to the red clause. Labovitz affixed copies of the calls to his affidavit. *See* Judah Labovitz Aff. at ¶ 2, Pl.'s Mem. Opp. Ex. A.

The two affidavits of Robert Feinberg, Plaintiff's employee, state that on July 21, 1995, July 25, 1995, September 11, 1995, and September 14, 1995, Central Asia sent facsimiles and hard copy letters to Meridian's Philadelphia office. In three of these communications, Central Asia advised Meridian that it made advances to Fashion Will. Each letter enclosed copies of Fashion Will's drafts, as well as undertakings by Fashion Will addressed to Plaintiff.[5] On September 27, 1995, Fashion Will informed him it could not deliver Plaintiff's orders. Fashion Will also revealed that Central Asia devalued its collateral and reduced . its line of credit. Fashion Will further admitted that funds received by Central Asia under the red clauses had been used to pay down Fashion Will's indebtedness to Central Asia rather than fill Plaintiff's order. In a telephone conversation with Feinberg, Alan Tang, a loan officer at Central Asia, confirmed that Central Asia had used the red clause advances to pay off Fashion Will's indebtedness to Central Asia. *See* Robert Feinberg Aff. at ¶ 6, Pl.'s Mem. Opp. Ex. C.

The affidavit of Bruce Feinberg, Plaintiff's employee, supports the contention that Fashion Will, acting in response to pressure exerted by Central Asia, used the red clause funds to pay down its indebtedness to Central Asia by placing the advances into its general business account at Central Asia. According to Fashion Will, Central Asia knew the red clause money was being used to pay down Fashion Will's debt. Bruce

---

**4.** Robert H. Feinberg, Plaintiff's authorized representative, attached a verification to the Complaint averring that the statements made therein are true and correct. I consider the verified Complaint a submission in support of Plaintiff's position and will afford it the same consideration I would an affidavit. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991) (finding that as a general rule, in the context of a motion for summary judgment, "the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion.... [A] *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge").

**5.** Robert Feinberg attached copies of the facsimiles and letters to his affidavit.

Feinberg Aff. at ¶¶ 8, 12, Pl.'s Mem.Opp. Ex. D.

I conclude that Plaintiff, in supporting its allegations through factual affidavits, has made a *prima facie* showing under Pennsylvania's long arm statute. Construing the submissions in the light most favorable to Plaintiff suggests Central Asia directed fraud at the Commonwealth and perpetrated fraudulent acts which injured a party within the Commonwealth. *See* 42 Pa.Cons.Stat.Ann. § 5322(a)(3), (4). Plaintiff has pointed to evidence that Central Asia submitted to Meridian, on at least three different occasions, documents misrepresenting the intended uses of the advances; Central Asia knew Fashion Will used the monies to pay down Fashion Will's indebtedness; and Central Asia pressured Fashion Will into taking this course of action.

## B. *MINIMUM CONTACTS*

■ The court must next assess whether application of the Pennsylvania long arm statute to the facts presented violates the Due Process Clause of the United States Constitution. "Pennsylvania's long arm statute provides that its reach is co-extensive with the limits placed on the states by the federal Constitution. We therefore look to federal constitutional doctrine to determine [defendant's] susceptibility to personal jurisdiction in Pennsylvania." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir.1996) (citation omitted). In order to exercise specific jurisdiction[6] without offending the Due Process Clause of the Fourteenth Amendment, the Court employs a two prong test. "First, the defendant must have made constitutionally sufficient minimum contacts with the fo-

rum.... [Second], jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with traditional notions of fair play and substantial justice." *Vetrotex*, 75 F.3d at 150. In evaluating whether minimum contacts exist, the Court must "determine whether the defendant has purposefully directed its activities toward residents of the forum. There must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.*

■ Application of Pennsylvania's long arm statute to the facts presented in the instant case comports with federal notions of due process. Both the perpetration of a tortious act in the forum and the direction of a tortious act at the forum provide the necessary minimum contacts with that jurisdiction to make the exercise of *in personam* jurisdiction constitutionally permissible. Intentional and allegedly tortious actions expressly aimed at a particular forum indicate a reasonable anticipation of being haled into court in that forum to answer for those actions. *Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984) (finding the publication of an allegedly libelous story concerning California residents by a Florida newspaper, where the reporter had no relevant contact with California). *Calder* recognized that "an individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause injury in California." *Id.* Similarly, a Pennsylvania citizen allegedly victimized by the fraud of a Hong Kong bank should not have to travel to Hong Kong for recompense.

---

6. The law of the forum state applies in determining whether personal jurisdiction is proper. *Id.* (citing Fed.R.Civ.P. 4(e)). Under Pennsylvania law, two approaches exist for determining whether a court may exercise *in personam* jurisdiction over a non-resident corporate defendant: general jurisdiction and specific jurisdiction. *Peek v. Golden Nugget Hotel and Casino*, 806 F.Supp. 555, 557 (E.D.Pa.1992). "General jurisdiction exists where the defendant has maintained continuous and substantial forum affiliations. This basis is used when the claim does not arise out of or is unrelated to the defendant's

contacts with the forum." *Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 481 n. 3 (3d Cir.1993) (citations omitted).

In the absence of general jurisdiction, as in the instant case, the court examines whether specific jurisdiction exists. Specific jurisdiction arises when the plaintiff's claim is related to or arises out of the defendant's contacts with the forum state. *Mellon Bank (East) PSFS Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir.1992). The parties agree that this case involves a question of whether specific jurisdiction exists. *See* Tr., Oral Argument of 2/23/96, at 4.

The United States Court of Appeals for the Third Circuit employed a similar approach in *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3d Cir.1985). There, defendant traveled to Pennsylvania and fraudulently represented the cause of death to plaintiff's decedent, giving rise to a claim for intentional infliction of emotional distress. This activity amounted to minimum contact with the forum. "[T]he cause of action arises from defendant's in-state activities, and the defendant's misrepresentation, which occurred and caused injury in Pennsylvania to Pennsylvania residents, has a sufficient connection to meet the fair place and substantial justice standard of *International Shoe.*" *Id.* at 544. *See Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141, 146–147 (3d Cir.) (reasoning "[i]f an allegedly tortious act committed outside the forum state and causing effects within that state can suffice for the exercise of personal jurisdiction ... clearly an allegedly tortious act committed within the forum state which causes injury to a resident of that state ... conforms with due process"), *cert. denied*, 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *Paccar Int'l, Inc. v. Commercial Bank of Kuwait*, 757 F.2d 1058, 1064 (9th Cir.1985) (finding "allegedly fraudulent demand for payment [on a letter of credit] ... is sufficient to establish that [defendant performed some act by which he purposefully availed him/herself of the privilege of conducting activities in the forum]"). *Cf. Mann v. Tom James Co.*, 802 F.Supp. 1293, 1296 (E.D.Pa.1992) (viewing an unsolicited phone call as insufficient to illustrate that defendant "reasonably anticipated being haled into a Pennsylvania court or that he purposely availed himself of the privilege of conducting business in Pennsylvania").

This jurisprudence rests on the notion that parties who commit a tortious act in a forum, by virtue of this wrongdoing, become available for suit in that forum to answer for their actions. *See Gehling*, 773 F.2d at 544 ("having traveled to Pennsylvania to return decedent's body, appellees clearly availed themselves of the privilege of acting within Pennsylvania.... [They] could reasonably have anticipated being haled into court ... to answer for their alleged injurious representation").

Central Asia describes its contacts with Pennsylvania as fortuitous and attenuated. I disagree. "Mail and telephone communications sent by defendant into the forum may count toward the minimum contacts that support jurisdiction. It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines." *Grand Entertainment*, 988 F.2d at 482 (noting "so long as the contact creates a substantial connection, even a single telephone call into the forum state can support jurisdiction"). Central Asia allegedly enclosed misrepresentations when it contacted the forum via facsimile and hard copy letter. Because a material portion of this litigation revolves around the allegation that Central Asia sent fraudulent facsimiles to Meridian, those contacts create a sufficient connection with the forum to warrant exercising jurisdiction.

Central Asia submitted an affidavit in support of its Motion averring *inter alia* that it has no physical contacts with this forum, e.g., no branch office, employees, real estate, chattels, telephone listing, registration, license, etc. Central Asia's physical presence in the forum, however, is neither a "jurisdictional litmus test" nor a dispositive factor. *Mellon Bank*, 960 F.2d at 1225 (noting "when a defendant has received the benefits and protections of the forum's laws by engaging in business activities with a forum resident, the courts have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction") (citation omitted). While Central Asia did not reach out to this forum, it allegedly pressured Fashion Will to induce Plaintiff to modify the letters of credit. Central Asia was well aware that it was dealing with a Pennsylvania bank (Meridian) and a Pennsylvania resident (Plaintiff). Central Asia notified Meridian of the advances by facsimile and letters sent to Meridian's Philadelphia office. Both Letter 1 and Letter 2 listed a Pennsylvania resident (Plaintiff) as "applicant." *See Mellon Bank*, 960 F.2d at 1223 (stating defendants purposefully availed themselves of the privilege of conducting business in the Pennsylvania where they were aware that they were dealing with

a Pennsylvania bank which defendants initially approached to establish a business relationship).

## C. *FAIRNESS*

█ Once the Court finds that Plaintiff has shown sufficient minimum contacts exist to warrant exercising *in personam* jurisdiction, Defendant may still prevail by presenting a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Mellon Bank,* 960 F.2d at 1226 (citation omitted). Courts describe this burden as "heavy." *Grand Entertainment,* 988 F.2d at 483. In assessing whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice, the Court evaluates the burden on the Central Asia, "the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental social policies." *Asahi Metal Indus. Co., Ltd. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (internal quotations and citations omitted).

█ The relevant interests in the instant case tip the scales in Plaintiff's favor and compel the conclusion that Central Asia has not satisfied its burden. Pennsylvania has a strong interest in this litigation. The suit surrounds letters of credit issued by a Pennsylvania bank (Meridian) on the request of a Pennsylvania applicant (Plaintiff) which claims that it has been defrauded. Central Asia has made demands in Pennsylvania against Meridian for payment under the letters of credit. If Meridian remits the funds to Central Asia, Meridian will then look to a Pennsylvania resident, Plaintiff, for reimbursement. In evaluating the "interests of the several states," this Court need not concern itself with favoring one state over the

another because only one state, Pennsylvania, has an interest in this litigation.

Central Asia argues that it would be fundamentally unfair and unreasonable to require it to litigate this claim in Pennsylvania considering that all witnesses and evidence are located thirteen (13) time zones away in Hong Kong. In *Asahi,* the Supreme Court, in finding the exercise of *in personam* jurisdiction unreasonable, accorded significant weight to the fact that defendant would have to travel from Japan to California to defend itself. "[Defendant] has been commanded . . . not only to traverse the distance between [Japan and California] . . . but also to submit its dispute . . . to a foreign nation's legal system." *Id.* at 114, 107 S.Ct. at 1033. While *Asahi* appears to support Central Asia's position, the facts presented in that case are readily distinguishable. *Asahi* examined reasonableness in the context of whether a California court could exercise jurisdiction over a dispute between a Japanese tire valve assembly manufacturer and a Taiwanese tire manufacturer. While both parties to the *Asahi* litigation were foreign corporations, the instant case involves a lawsuit between a Pennsylvania corporation and a Hong Kong corporation. With one party anchored in the forum, any hardship suffered by Central Asia does not rise to the level of unreasonableness found in *Asahi.*

Finally, Central Asia contends that any exercise of *in personam* jurisdiction will have a chilling effect on the international finance community. According to Central Asia, banks will refuse to process letters of credit if mere allegations of fraud will subject them to jurisdiction in a foreign forum. After weighing this argument in the balancing test, I conclude that the chilling effect fails to compel a conclusion of unfairness. Several courts "have held that the mere issuance of a letter of credit naming a resident of a particular state as beneficiary does not subject the issuing bank to the jurisdiction of that state." *Chandler v. Barclays Bank, PLC,* 898 F.2d 1148, 1151 (6th Cir.1990).[7] Courts under-

---

7. *See e.g., Jet Charter Serv., Inc. v. Koeck,* 907 F.2d 1110, 1114 (11th Cir.1990) (noting "routing remittal of commercial instruments such as checks or letters of credit incidentally bound for the forum state insufficient to establish minimum

contacts") (citation omitted), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 447 (1991); *Paccar,* 757 F.2d at 1063–64 (concluding "the record does not support the conclusion that [defendant] purposefully availed itself of the priv-

stand that "it would be unfair to burden an issuing bank with having to defend litigation over a letter of credit in any state in which the bank could reasonably expect the credit to be used." *Jet Charter*, 907 F.2d at 1114 (citation omitted). *See Leney*, 670 F.2d at 881 (refusing to subject "any bank that issues a letter of credit to suit in any state in which the bank could expect the credit to be used to buy goods or real estate").

The rationale behind these decisions is that it would be fundamentally unfair to subject an issuing bank to a forum's jurisdiction solely because the beneficiary sued under a letter of credit in that forum. A contrary result would produce an unreasonable chilling effect and present serious impediments to financial transactions. The instant case presents a situation dealing with more than a beneficiary suing an issuing bank exclusively on the basis of a financial transaction; the Court faces verified allegations of fraud. While it may be unfair to burden an issuing bank with the prospect of defending litigation in any forum where the letter of credit was used to buy goods or property, it is not unduly burdensome to subject a negotiating bank to personal jurisdiction in a forum where it allegedly committed tortious acts. The burden imposed on Central Asia does not rise to the same level of unreasonableness as that suffered by banks which did no more than issue a letter of credit. Accordingly, I find that exercising *in personam* jurisdiction over Central Asia will not offend traditional notions of fair play and substantial justice.

An appropriate Order follows.

### ORDER

AND NOW, this 28th day of March, 1996, upon consideration of Defendant Central Asia Capital Corporation, Limited's Motion to Dismiss (Doc. No. 3); Plaintiff's Memorandum in Opposition thereto (Doc. No. 5); Defendant's Reply Brief in Support of Its Motion (Doc. No. 6); and oral argument held

before this Court on February 23, 1996, IT IS HEREBY ORDERED THAT:

1. Defendant's Motion is DENIED.

ilege of conducting business in California by becoming the beneficiary of the letter of credit"); *Leney v. Plum Grove Bank*, 670 F.2d 878, 881 (10th Cir.1981) (refusing to allow Colorado court to exercise jurisdiction over Illinois bank which issued letter of credit naming California resident as designated beneficiary); *Empire Abrasive*

*Equip. v. H.H. Watson, Inc.*, 567 F.2d 554, 557 (3d Cir.1977) (determining that a Rhode Island issuing bank does not subject itself to the adjudicatory authority of a Pennsylvania court solely because the beneficiary was a Pennsylvania resident).