**PENZOIL PRODUCTS COMPANY,**
Plaintiff,

v.

**COLELLI & ASSOCIATES, INC., Colelli Oil Well Services, Inc., Pyramid Treating, Inc., T.O.P. Production & Oilfield Services, Inc., and Chemical Solvents, Inc., Defendants.**

Civil Action No. 95–229 Erie.

United States District Court,
W.D. Pennsylvania.

Feb. 7, 1997.

William M. Wycoff, Thorp, Reed & Armstrong, Pittsburgh, PA, for Pennzoil Products Company.

Jaime P. Serrat, Shawn P. Martin, Cleveland, OH, for Colelli & Associates, Inc.

Theodore O. Struk, Dickie, McCamey & Chilcote, Pittsburgh, PA, for Pyramid Treating, Inc.

William W. Guthrie, William W. Guthrie & Associates, Pittsburgh, PA, for T.O.P. Production & Oilfield Services, Inc.

Edwin Allen Young, Pittsburgh, PA, for Chemical Solvents, Inc.

### MEMORANDUM OPINION

McLAUGHLIN, District Judge.

This is a products liability case. Our jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. Presently pending before this Court is Defendants' Colelli & Associates, Inc. and Colelli Oil Well Services, Inc. motion to dismiss for lack of personal jurisdiction.[1] The other Defendants have not joined in the motion. For the reasons set forth below, Defendants' motion is granted.

### I. BACKGROUND

Plaintiff Penzoil Products Company ("PPC") is a Nevada corporation with its principal place of business in Houston, Texas. Among other things, PPC operates a refinery located in Rouseville, Pennsylvania for which it purchases Penn grade and Corning grade crude oil from oil producers in Ohio. Defen-

dants Colelli & Associates, Inc. ("CAI") and Colelli Oil Well Services, Inc. ("COWSI") are Ohio corporations with their principle places of business in New Philadelphia, Ohio. CAI and COWSI are in the oil well maintenance business. CAI distributes chemicals that are used to clean residue from oil wells. COWSI contracts with oil producers to clean and maintain oil wells.

Toluene is a chemical used to control paraffin buildup in oil wells. PPC claims that the toluene used by COWSI (and distributed by CAI) to clean oil wells in Ohio contained silicone; and that the silicone mixed with the crude oil extracted from those wells that was shipped to Pennsylvania and caused harm to PPC's refining equipment in its Rouseville facility. PPC's complaint alleges causes of action for strict liability and negligence.

The record contains no evidence indicating that either CAI or COWSI have any direct business contacts with Pennsylvania. Apparently, both companies do business in Ohio with Ohio oil producers. In opposition to CAI and COWSI's motion, PPC has submitted an affidavit from its Crude Oil Representative, John Wesley ("Wesley"), which states that it is common industry knowledge that sixty percent of all Penn grade and Corning grade crude produced in Ohio is sold to two Pennsylvania refineries, one of which is PPC's Rouseville facility. Wesley also states that CAI and COWSI President, Cam Colelli ("Colelli") was aware of past incidents of chlorine contamination in crude oil delivered to PPC's Rouseville refinery; and that Colelli had worked with Rouseville lab personnel on the problem, providing PPC with solvent samples. Wesley further states that Colelli had participated in a trade association seminar presented by a PPC representative, addressing crude oil contamination issues. Additionally, PPC submitted the deposition of Colelli wherein he admits, in substance, that he knew that silicone in solvents used to clean wells could mix with crude oil and be transported to refineries.

---

1. Defendants styled the motion one to dismiss pursuant to Fed.R.Civ.P. 12(b)(2). That denomination is incorrect since the motion was filed post-answer. Nevertheless, since lack of person-al jurisdiction was preserved as a defense in the respective answers, we will treat the motion as seeking judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

## II. STANDARD OF REVIEW

■ When a defendant raises the defense of lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper. *Mellon Bank (East) PSFS, N.A. v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992) (*citing Carteret Savings Bank v. Shushan,* 954 F.2d 141 (3d Cir.1992), *cert. denied,* 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992)). The plaintiff meets this burden by making a prima facie showing of "sufficient contacts between the defendant and the forum state." *Mellon East,* 960 F.2d at 1223 (*citing Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.,* 819 F.2d 434 (3d Cir.1987)).

## III. DISCUSSION

■ As an initial matter, we reject PPC's argument that CAI and COWSI have waived the defense of lack of personal jurisdiction by proceeding with litigation on the merits under *Insurance Corp. v. Compagnie des Bauxites,* 456 U.S. 694, 704, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1981) and *Wyrough & Loser v. Pelmor Laboratories, Inc.,* 376 F.2d 543, 546 (3d Cir.1967). Defendants filed the instant motion on August 14, 1996, four months after the amended complaint. As indicated in note 1, *supra,* the defense had been preserved in the answers. Furthermore, CAI and COWSI had not proceeded with substantial discovery on the merits before filing the motion. The materials submitted by PPC show that the only discovery conducted prior to the filing of this motion was initiated by PPC.[2] Therefore, we turn our attention to the merits of the motion.

■ A federal court's authority to exercise personal jurisdiction over non-resident defendants is conferred by the law of the state in which it sits. Fed.R.Civ.P. 4(e); *Mellon,* 960 F.2d at 1221. The limits on the extent to which that authority may be exercised are provided by the Due Process Clause of the Fourteenth Amendment to the Federal Constitution. *Kulko v. California Superior Court,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132 (1978). Pennsylvania's long arm jurisdiction statute authorizes courts to exercise jurisdiction to the "fullest extent allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b). "Therefore, this Court's inquiry is solely whether the exercise of personal jurisdiction over the defendant would be constitutional." *Renner v. Lanard Toys Ltd.,* 33 F.3d 277 (3d Cir.1994).

■ The Constitutional limitations on the exercise of personal jurisdiction differ depending upon whether a court seeks to exercise general or specific jurisdiction over a non-resident defendant. *Mellon,* 960 F.2d at 1221. General jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant for even non-forum related activities when the defendant has engaged in "systematic and continuous" activities in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984). In the absence of general jurisdiction, specific jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant for only forum-related activities where the "relationship between the defendant and the forum falls within the 'minimum contacts' framework" of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. *Mellon,* 960 F.2d at 1221.

■ PPC does not contend that we should exercise general jurisdiction and has confined its briefs solely to the issue of specific jurisdiction. Therefore, we will only discuss specific jurisdiction. The often quoted Supreme Court language concerning specific jurisdiction teaches that the defendant must have "minimum contacts" with the forum state and that the exercise of jurisdiction must be "reasonable." *Id.* We conclude that "minimum contacts" are lacking here and will not reach the "reasonableness" prong.

■ The "Constitutional touchstone" of the "minimum contacts" analysis focuses on whether the defendant "purposefully established" contacts with the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462,

---

**2.** PPC had served two sets of Interrogatories, one set of Requests for Production of Documents and had scheduled three Depositions for September 25 through 27, 1996.

475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985) (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 159–60, 90 L.Ed. 95 (1945)). In other words, the defendant must "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)).

These principles, however, have yet to produce a uniform approach in products liability cases. The extent to which a manufacturer, distributor or seller of products can be forced to defend a suit in a foreign jurisdiction in which one of its products has caused an injury is not a settled question. In *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court rejected the notion that the mere foreseeability that a product will find its way into a state and cause an injury there is a sufficient basis for personal jurisdiction. *World Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566 (1980). The Supreme Court explained that the foreseeability that is crucial to the minimum contacts analysis is the reasonable expectation of being "haled into court" in a jurisdiction. *Id.* The court held that a plaintiff's "unilateral act" of driving an automobile into a state was not enough to establish minimum contacts. *Renner*, 33 F.3d at 279–280. In his dissent, Justice Brennan alluded to the idea of a "stream of commerce" theory of personal jurisdiction in products liability cases. *Renner*, 33 F.3d at 280 (*citing World Wide Volkswagen*, 444 U.S. at 306, 100 S.Ct. at 584).

Under the stream of commerce theory, the idea is that a defendant has subjected itself to jurisdiction in the place of injury when it has placed a product into a stream of commerce that has carried the product to that destination. In *Asani Metal Industry Co. v. Superior Court*, 480 U.S. 102, 111, 107 S.Ct. 1026, 1031–32, 94 L.Ed.2d 92 (1987) the Supreme Court addressed the "stream of commerce" theory, but could not agree on the proper formulation of the test. Justice Brennan, writing for a plurality of four justices, articulated the most liberal formulation of the test. Justice Brennan indicated that he would permit the exercise of personal jurisdiction based solely on a defendant's act of placing a product into the stream of commerce with knowledge of its destination. *Asani Metal*, 480 U.S. at 117, 107 S.Ct. at 1034–35. Central to Justice Brennan's reasoning was his definition of the "stream of commerce" as the "regular and anticipated flow of products from manufacture to distribution to retail" and not as "unpredictable currents or eddies." *Id.* Justice Brennan reasoned that when a defendant is "aware that a final product is being marketed in the forum State, the possibility of a lawsuit there can not be a surprise." *Id.*

Justice O'Connor, also writing for four justices, indicated that she would not permit the exercise of jurisdiction based solely on the fact that a defendant had placed a product into the stream of commerce, but would require some "additional conduct" demonstrating "an intent or purpose to serve the market in the forum state." *Asani Metal*, 480 U.S. at 112, 107 S.Ct. at 1032. Justice O'Connor provided the following examples: "designing a product for market in the forum state, advertising in the forum state, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as a sales agent in the forum state." *Id.* at 112, 107 S.Ct. at 1032.

Justice Stevens rejected an unwavering line between "mere awareness" and "purposeful availment" and indicated that he would favor an analysis that focused on the "volume, value, and hazardous character of the components." *Id.* at 122, 107 S.Ct. at 1037. He reasoned that a regular course of dealing that resulted in the delivery of over 100,000 units annually would rise to the level of purposeful availment. *Id.*

In *Renner v. Lanard Toys Ltd.*, 33 F.3d 277 (3d Cir.1994), the Third Circuit was confronted with the stream of commerce theory, but did not provide guidance as to which version of the test should be applied in this Circuit. *Renner* involved an injury caused by a toy airplane that had been purchased in Pennsylvania. *Renner*, 33 F.3d at 278. The record in *Renner* showed that the defendant

manufactured toys in Hong Kong and sold them to independent distributors F.O.B. (freight-on-board) Hong Kong. *Id.* The defendant did not sell or manufacture toys in Pennsylvania, or own property, have employees, offices, bank accounts or agents in Pennsylvania; and it had no way of knowing or controlling where its products would be sold. *Id.* The plaintiffs had submitted evidence that the toy was still being sold in Pennsylvania and that the defendant had conducted a test, at the request of a Pennsylvania retailer, in its laboratory in Hong Kong to determine whether the plane complied with that store's safety protocol. *Id.* at 278–79. In *dicta*, the Third Circuit indicated that the record, as adduced, would not be sufficient to show "purposeful availment," but then remanded the case to the district court for further discovery. *Renner*, 33 F.3d at 284.

Fortunately, we do not need to speculate here as to which formulation of the stream of commerce theory either the Third Circuit or the Supreme Court is likely to endorse because we conclude that the record in this case does not satisfy any version of the test. The record fails even the most liberal formulation of the stream of commerce test, as articulated by Justice Brennan, because the toluene did not reach its destination as the result of being intentionally placed into a "stream of commerce" that ran into Pennsylvania. Justice Brennan defined the "stream of commerce" as the "regular and anticipated flow of products from manufacture to distribution to retail." The conduct which resulted in the transportation of the toluene to Pennsylvania can not be characterized as a "regular and anticipated flow of products from manufacture to distribution to retail." CAI and COWSI sold and/or used toluene to clean wells in Ohio, intending that its end use occur in Ohio. The toluene reached Pennsylvania because it mixed with crude oil that flowed through wells which had been treated with the chemical. There was no stream of commerce of toluene running into Pennsylvania. The Defendants did not sell toluene to independent distributors with the knowledge that it would be marketed in Pennsylvania. Nor can the toluene be viewed as component parts of a final product that the Defendants knew would be sold in Pennsylvania. Our

analysis is further supported by the materials submitted by PPC in opposition to the instant motion, which are directed at the fact that it was foreseeable that silicone could contaminate crude oil in Ohio and end up being transported to refineries in Pennsylvania. This type of attenuated foreseeability is beyond even the bounds of Justice Brennan's approach. Even if CAI and COWSI could be said to have purposefully placed toluene into a stream of commerce, that stream ran dry long before it reached Pennsylvania.

It is obvious that, if the record fails the most liberal formulation of the stream of commerce theory, it must also fail the versions articulated by Justices Stevens and O'Connor. Moreover, the record also fails Justice O'Connor's test because it is lacking in evidence of "additional conduct" demonstrating "an intent or purpose to serve the market in the forum state." Working with PPC's lab on one occasion and attending a seminar at which one of the Plaintiff's representatives lectured is not enough. The record fails Justice Stevens' test for the same reason. Even if we were to engage in a constitutional balancing test, it is clear that these factors, along with the volume, value and character of the toluene would not lead us to conclude that jurisdiction is proper.

■ PPC also argues that jurisdiction is proper under a "tort out—harm in" or "effects" theory. However, PPC has not cited to a single products liability case where personal jurisdiction was exercised on the basis of the "effects" theory. PPC, rather, urges us to accept the general proposition that the "effects" theory is an appropriate basis for jurisdiction whenever an injury in the forum is foreseeable. If this were the law, it would directly contradict the Supreme Court's unequivocal rejection of the idea that jurisdiction can be based solely on the foreseeability of harm in the forum. *See World Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566. In fact, in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1983), the Supreme Court addressed the "effects" theory. In *Calder*, the Supreme Court upheld California's exercise of jurisdiction, based on the "effects" theory, over a Florida resident who had edited and published an

allegedly defamatory article in the National Inquirer. *Calder,* 465 U.S. at 786, 104 S.Ct. at 1485. The Supreme Court held that jurisdiction was proper because the defendant's "intentional, and allegedly tortious, actions were aimed at [the forum]," and distinguished the case from a hypothetical involving "mere untargeted negligence." *Id.* at 789, 104 S.Ct. at 1487. "Thus, Calder established the proposition that, where intentional tortfeasors know that their actions will harm a plaintiff in a particular forum, and that the brunt of the injury caused by their actions will be felt in that forum, they will be subject to jurisdiction there." *Wright v. Xerox Corp.,* 882 F.Supp. 399, 405 (D.N.J.1995) (citations omitted).

██ Moreover, a review of "effects" cases in this Circuit does not reveal that the theory has been given broader application, but rather suggests that it has been applied in a narrow class of cases where harm is deliberately or knowingly directed at a resident of the forum. *See, e.g., Paolino v. Channel Home Centers,* 668 F.2d 721 (3d Cir.1981) (action in Pennsylvania, by Pennsylvania resident, against Tennessee corporation for breach of trust); *Feinberg, Inc. v. Central Asia Capital Corp.,* 936 F.Supp. 250 (E.D.Pa. 1996) (action in Pennsylvania, by Pennsylvania resident, against Hong Kong bank for fraud); *Wright,* 882 F.Supp. 399 (action by New Jersey resident against foreign corporate officers for racial discrimination); *Techno Corp. v. Dahl Associates, Inc.,* 535 F.Supp. 303 (W.D.Pa.1982) (action in Pennsylvania, by Pennsylvania resident against New Jersey residents for intentional interference with contractual relationships). PPC does not allege that it was the target of any deliberate wrongs; nor do we view a products liability case founded on theories of strict liability and negligence as involving the type of deliberate, targeted harm necessary to invoke the "effects" theory.

Finally, there is no need to permit PPC to conduct additional discovery before ruling on this motion. *C.f. Renner,* 33 F.3d at 283. This motion was filed on September 14, 1996. Plaintiff has already had almost five months to conduct discovery to uncover additional evidence supporting the exercise of jurisdiction and to supplement the record. In fact, PPC did supplement the record on December 10, 1996. If additional evidence supporting jurisdiction were available, we would expect that it would be part of the record by now.

## IV. CONCLUSION

An appropriate order follows.

## ORDER

AND NOW, this 7th day of February, 1997, IT IS HEREBY ORDERED that Defendants' Colelli & Associates, Inc. and Colelli Oil Well Services, Inc. Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 42] is GRANTED, the above Defendants are dismissed from the case, and the clerk and the remaining parties are instructed to amend the caption of the case accordingly.